UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LAQAUNTA RENEE REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| VANDERBILT UNIVERSITY MEDICAL CENTER, | ) | **JURY DEMAND** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff LaQaunta Renee Reid, by and through counsel, for her Complaint against Defendant Vanderbilt University Medical Center ("VUMC"), alleges as follows:

### INTRODUCTION

1.   This is an action for race discrimination and retaliation arising out of Plaintiff's employment with VUMC.

2.   Plaintiff is a Black woman who devoted approximately seventeen (17) years of service to VUMC. After she opposed racist conduct by her supervisor, disclosed that conduct to the affected coworker, and participated in the resulting HR process, her working conditions changed dramatically.

3.   Thereafter, Plaintiff was subjected to heightened scrutiny, loss of flexibility, changes to her duties and work environment, denial of comparable advancement, and ultimately selection for a purported reduction in force ("RIF").

1

4.    VUMC's stated rationale for those actions was pretextual. Plaintiff was treated less favorably than similarly situated White employees, and she was targeted because of her race and because she engaged in protected activity.

## JURISDICTION AND VENUE

5.    This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

6.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3).

7.    Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in this District, including in Nashville, Davidson County, Tennessee.

## PARTIES

8.    Plaintiff LaQaunta Renee Reid is an adult resident of Davidson County, Tennessee.

9.    Defendant Vanderbilt University Medical Center ("VUMC") is an employer within the meaning of Title VII and was Plaintiff's employer at all relevant times.

10.    At all relevant times, Defendant employed well over fifteen (15) employees and was engaged in an industry affecting commerce within the meaning of Title VII.

11.    Defendant may be served through its registered agent for service of process, as identified by the Tennessee Secretary of State.

## ADMINISTRATIVE PREREQUISITES

12.    Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") concerning the discriminatory and retaliatory conduct alleged herein.

2

13. The EEOC issued a Notice of Right to Sue on or about February 11, 2026, which Plaintiff received on or about February 11, 2026.

14. This action is timely filed within the period allowed by law following Plaintiff's receipt of the Notice of Right to Sue.

15. To the extent certain acts described below occurred outside the Title VII charge period, Plaintiff alleges them as relevant background evidence of discriminatory and retaliatory motive, intent, and pretext, in addition to the independently actionable conduct that occurred within the limitations period.

## FACTUAL ALLEGATIONS

16. Plaintiff first began working for VUMC in approximately 2009 or 2010.

17. On January 4, 2021, Plaintiff internally transferred into VUMC's Office of Finance.

18. Plaintiff had a strong work history at VUMC and consistently performed her job well.

19. In the Office of Finance, Plaintiff worked under supervisor Brenda Oliphant. Karen Pittman, an Associate Vice President of Finance, held supervisory authority above Oliphant.

20. From early in Plaintiff's time in the Office of Finance, Oliphant made racially offensive remarks and engaged Plaintiff in inappropriate race-based conversations that made Plaintiff uncomfortable.

21. Within months of joining Oliphant's team, Plaintiff raised concerns to Pittman about Oliphant's conduct.

22. Pittman minimized Plaintiff's concerns and did not take meaningful corrective action.

3

23. In early 2023, Plaintiff witnessed Oliphant repeat an overtly racist remark about Nick Walker, a Black employee in the VUMC IT Department.

24. As Walker walked away and was out of earshot, Oliphant told Plaintiff that when she came home, her husband said, 'What did that nigger do this time?'

25. Plaintiff reacted with visible shock. Oliphant then attempted to walk back the remark and made additional comments suggesting Plaintiff was somehow different from other Black people.

26. The next day, after learning Walker had not heard the remark himself, Plaintiff truthfully told him what Oliphant had said.

27. Walker promptly reported the matter to Human Resources.

28. Pittman, as Oliphant's supervisor, learned of Walker's complaint that same day and contacted Plaintiff that evening to question why Plaintiff had told Walker what Oliphant said.

29. Rather than focus on Oliphant's use of an egregious racial slur, Pittman expressed frustration with Plaintiff for disclosing it.

30. Plaintiff then participated in the resulting HR investigation and truthfully reported what she had witnessed.

31. Oliphant was terminated on or about February 13, 2023.

32. On or about February 14, 2023, Pittman assumed direct supervisory authority over Plaintiff, and Plaintiff's treatment changed immediately and materially.

33. After taking over as Plaintiff's supervisor, Pittman raised performance concerns, revoked Plaintiff's existing remote-work arrangement, and moved Plaintiff from an office to a cubicle so Plaintiff could be more closely watched.

34. Pittman also changed Plaintiff's job duties and otherwise subjected Plaintiff to increased scrutiny.

35. When Plaintiff questioned why she, the only Black employee, was being required to work fully on-site while White coworkers continued working remotely, she received no legitimate explanation.

36. Instead, Pittman made statements to the effect that Plaintiff needed to be watched and that there was a "new sheriff in town."

37. In September 2023, Plaintiff reported through HR and Employee Relations that she felt she was being mistreated and retaliated against and requested reassignment due to the hostile environment.

38. VUMC failed to take effective remedial action.

39. Employee Relations later advised Plaintiff that it could not substantiate her retaliation complaint and closed the matter.

40. After Plaintiff engaged in protected activity, she continued to experience heightened scrutiny, discipline, and unfavorable treatment not imposed on similarly situated White employees.

41. In January 2025, Pittman implemented what was described as a department-wide "reclassification."

42. Before that reclassification, Plaintiff and Jeanna Buttrey both held the title of Program Manager.

43. After the reclassification, Buttrey was elevated to Senior Program Manager, while Plaintiff was moved into the title of Business Process Manager, despite no material change in Plaintiff's actual duties.

44. Likewise, Melissa Garris advanced from Business Process Manager to Senior Business Process Manager.

45. Thus, while White employees remained on their existing tracks and advanced into senior-level roles, Plaintiff was diverted onto a different track and denied comparable advancement.

46. On June 27, 2025, VUMC notified Plaintiff that her position was being eliminated as part of a reduction in force ("RIF"), with a non-working notice period through August 31, 2025.

47. Pittman told Plaintiff that VUMC did not need another Business Process Manager.

48. That explanation was false and pretextual.

49. VUMC retained White employees in comparable or more senior roles within the department.

50. Pittman had also recently hired Mac Smith, a White employee, into the department shortly before Plaintiff was selected for the RIF.

51. Plaintiff's selection for the RIF was not the product of neutral workforce-reduction criteria. Instead, Plaintiff was singled out because of her race and because she had opposed race-based misconduct and participated in protected internal processes.

52. VUMC did not apply neutral, objective, consistently applied RIF criteria to Plaintiff.

53. Plaintiff's duties did not disappear in any meaningful sense; instead, they were absorbed or continued by other employees who were not Black and/or had not engaged in protected activity.

54. VUMC's decision to retain White employees in comparable or senior roles, while selecting Plaintiff's position for elimination, departed from ordinary RIF logic and supports an inference of discrimination and retaliation.

55. Plaintiff mitigated her damages by promptly obtaining other employment within the VUMC system. She did so only after her Office of Finance position was eliminated and only at materially lower compensation, status, flexibility, and advancement opportunity.

56. In late August 2025, Plaintiff began a new hourly position in a different VUMC department at approximately $24.00 per hour.

57. In or around January 2026, Plaintiff moved to another VUMC department at approximately $29.50 per hour.

58. Before the RIF, Plaintiff held a salaried exempt position in the Office of Finance earning approximately $68,500 per year.

59. As a result of VUMC's conduct, Plaintiff suffered and continues to suffer lost wages, lost earning capacity, lost benefits, reduced retirement contributions, diminished status, and loss of workplace flexibility and autonomy.

60. During 2023, while still working under Pittman, Plaintiff sought counseling through VUMC's Work/Life Connections Employee Assistance Program because of the distress caused by the work environment.

61. Plaintiff also suffered emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life as a result of Defendant's conduct.

62. VUMC later offered Plaintiff a separation package under its RIF policy, but any payment was conditioned on execution of an agreement.

63. Plaintiff did not sign any release and did not waive her claims.

7

**COUNT I: Race Discrimination in Violation of Title VII (42 U.S.C. § 2000e et seq.)**

64. Plaintiff incorporates by reference Paragraphs 1 through 63 as if fully set forth herein.

65. Plaintiff is a member of a protected class.

66. Plaintiff was qualified for her position and performed her job satisfactorily.

67. Defendant subjected Plaintiff to adverse employment actions and materially adverse changes in the terms and conditions of employment, including but not limited to the loss of her remote-work arrangement, relocation from an office to a cubicle for closer monitoring, changes to her duties, heightened scrutiny and discipline, denial of comparable advancement in the January 2025 reclassification, and selection for the June 2025 RIF.

68. Defendant treated Plaintiff less favorably than similarly situated White employees.

69. Among other things, White employees were permitted to continue working remotely, were maintained on favorable promotion tracks, were advanced into senior roles, and were retained rather than selected for elimination.

70. Defendant's stated reasons for its actions were not true reasons, but were instead a pretext for race discrimination.

71. Defendant intentionally discriminated against Plaintiff because of her race in violation of Title VII.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to all remedies available under Title VII.

**COUNT II: Retaliation in Violation of Title VII(42 U.S.C. § 2000e et seq.)**

73. Plaintiff incorporates by reference Paragraphs 1 through 72 as if fully set forth herein.

74. Plaintiff engaged in protected activity under Title VII, including by complaining about race-based conduct, opposing racially offensive treatment, informing Nick Walker of the racist slur directed at him, participating in the resulting HR investigation, and later complaining through HR and Employee Relations that she was being mistreated and retaliated against.

75. Defendant knew of Plaintiff's protected activity.

76. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including revocation of her remote-work arrangement, increased scrutiny, changes to her duties and work environment, denial of comparable advancement, and selection for the RIF.

77. There is a causal connection between Plaintiff's protected activity and the adverse actions taken against her.

78. The temporal sequence, Pittman's reaction to Plaintiff's disclosure of Oliphant's slur, Pittman's knowledge of Plaintiff's protected activity, the immediate deterioration in Plaintiff's treatment after Oliphant's termination, and the implausibility of the proffered RIF rationale all support retaliatory motive.

79. Defendant's stated reasons for its actions were not true reasons, but were instead a pretext for retaliation.

80. Defendant retaliated against Plaintiff in violation of Title VII.

81. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to all remedies available under Title VII.

**COUNT III: Race Discrimination in Violation of 42 U.S.C. § 1981**

82. Plaintiff incorporates by reference Paragraphs 1 through 81 as if fully set forth herein.

83. Section 1981 protects Plaintiff's right to make and enforce contracts and to enjoy the benefits, privileges, terms, and conditions of the contractual employment relationship without racial discrimination.

84. Defendant intentionally discriminated against Plaintiff because of her race with respect to the terms, conditions, and privileges of her employment.

85. Defendant's discriminatory conduct included, among other things, subjecting Plaintiff to disparate treatment, denying her comparable advancement, and selecting her for elimination while treating similarly situated White employees more favorably.

86. Defendant's conduct was intentional, willful, malicious, and/or carried out with reckless indifference to Plaintiff's federally protected rights.

87. Plaintiff's race was a but-for cause of Defendant's discriminatory treatment, including the denial of comparable advancement and the selection of Plaintiff's Office of Finance position for elimination.

88. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to recover under 42 U.S.C. § 1981.

**COUNT IV: Retaliation in Violation of 42 U.S.C. § 1981**

89. Plaintiff incorporates by reference Paragraphs 1 through 88 as if fully set forth herein.

90. Plaintiff engaged in protected activity by opposing race discrimination and race-based harassment and by participating in internal complaint and investigative processes concerning such conduct.

91. Defendant knew of Plaintiff's protected activity.

92. Defendant thereafter took materially adverse actions against Plaintiff, culminating in the loss of her position through the purported RIF.

93. Defendant acted because Plaintiff opposed race discrimination and participated in processes related to race discrimination.

94. Plaintiff's protected opposition to race discrimination was a but-for cause of Defendant's retaliatory treatment.

95. Defendant's conduct violated 42 U.S.C. § 1981.

96. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to recover under 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

1. A declaration that Defendant violated Plaintiff's rights under Title VII and 42 U.S.C. § 1981;

2. Back pay, including differential wages, lost benefits, lost retirement contributions, and all other economic losses in an amount to be determined at trial;

3. Front pay and/or reinstatement to a comparable position, together with restoration of compensation, benefits, status, and other terms and conditions of employment;

4. Compensatory damages for emotional distress, humiliation, inconvenience, and loss of enjoyment of life;

5. Punitive damages to the fullest extent permitted by law;

6. Prejudgment interest and post-judgment interest;

11

7.     Plaintiff's reasonable attorney's fees, expenses, and costs pursuant to applicable law;

8.     Such other and further legal or equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/     John B. Coke*
JOHN B. COKE (#028109)
MATHEW R. ZENNER (#018969)
ZENNER LAW, PLLC
320 Seven Springs Way, Suite 250
Brentwood, TN 37027
Telephone: (615) 425-3476
jczennerlaw@gmail.com
mrzennerlaw@gmail.com
Attorneys for Plaintiff

12